UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRENCE MONTREL TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> JOHN CUNNINGHAM, <br><br> Defendant. | Case No. 3:22-cv-00296 <br><br> Judge Aleta A. Trauger <br> Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se and *in forma pauperis* Plaintiff Terrence Montrel Taylor's incarceration at Riverbend Maximum Security Institution (Riverbend) in Nashville, Tennessee. (Doc. No. 20.) Defendant John Cunningham is a Riverbend correctional officer. (*Id*.) This Memorandum Order addresses six motions: Taylor's motion to compel Defendant John Cunningham's production of surveillance video footage, medical records, and logbooks (Doc. No. 39); Taylor's motion to compel non-parties Riverbend Warden Tony Mays, Riverbend Internal Affairs Officer Kelly Hunt, and Riverbend Medical Director Kyla Solomon's production of surveillance video footage, medical records, logbooks, and incident reports (Doc. No. 46); Taylor's motion to compel Cunningham's responses to two sets of interrogatories (Doc. No. 49); Taylor's motions for a status conference (Doc. Nos. 43, 46-1); and Taylor's motion for a jury trial (Doc. No. 48).

For the reasons that follow, Taylor's motion to compel Cunningham's production of surveillance video footage, medical records, and logbooks (Doc. No. 39) will be granted in part. Taylor's motion to compel non-parties Mays, Hunt, and Solomon's production of Taylor's surveillance video footage, medical records, logbooks, and incident reports (Doc. No. 46) will be

denied. Taylor's motion to compel Cunningham's responses to two sets of interrogatories (Doc. No. 39) will be denied without prejudice to refiling after the parties meet and confer regarding Cunningham's responses to the interrogatories. Taylor's motions for a status conference (Doc. Nos. 43, 46-1) will be denied and his motion for a jury trial (Doc. No. 48) will be found moot.

I. **Relevant Background**

Taylor alleges that, in December 2021, Cunningham refused to remediate a leak of raw sewage into Taylor's cell for more than three weeks and denied Taylor's requests to obtain medical care for symptoms related to sewage exposure. (Doc. No. 20.) Taylor alleges that, on December 4, 2021, the shower drain in the D-pod where he was housed began "spewing toxic sewage[,] water, urine, and feces." (*Id.* at PageID# 88.) Taylor complained to Cunningham about the leak and asked Cunningham to call maintenance; Cunningham refused to help, and Taylor was not moved into a new B-pod cell until December 28, 2021. (Doc. No. 20.) Taylor further alleges that "[b]reathing [the] toxic fumes caus[ed] headaches, coughing" and a skin rash and that Cunningham denied his requests for medical assistance for these conditions on December 27, 28, and 29, 2021. (*Id.* at PageID# 81.)

The Court screened Taylor's amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and 42 U.S.C. § 1997e and found that it states colorable Eighth Amendment claims against Cunningham related to Taylor's alleged conditions of confinement and Cunningham's alleged deliberate indifference to Taylor's serious medical needs. (Doc. No. 24.) Cunningham answered Taylor's amended complaint (Doc. No. 30), and the Court entered a scheduling order setting deadlines for amending the pleadings, conducting discovery, and filing dispositive motions (Doc. No. 31).

Taylor filed a request for production under Federal Rule of Civil Procedure 34 on October 19, 2022.[1] (Doc. No. 29.) Taylor asked Cunningham to produce all "internal affairs video footage" of D-pod and B-pod at Riverbend for December 27 through 29, 2021. (*Id.* at PageID# 145.) Taylor also requested "[a]ny medical records[;]" all logbooks for Unit 1 of B-pod for December 28, 2021, and Unit 1 of D-pod for December 4, 27, 28, and 29, 2021; and "all copies of papers, records, and other documents" that "relate or pertain to the incident on" December 4 and 27, 28, and 29, 2021.[2] (*Id.*)

On December 19, 2022, Taylor filed a "Motion for Production Order (Notice of Defendant's Failure to Comply With Requests for Production of Video Tape and Other Evidence)[,]" which the Court construes as a motion to compel. (Doc. No. 39, PageID# 180.) Taylor asserts that Cunningham has failed to comply with his requests to produce Taylor's medical records and the surveillance video and logbooks from December 4, 27, 28, and 29, 2021, and asks the Court to order Cunningham to produce these records. (Doc. No. 39.) Taylor attached "inmate inquiry - information request" forms directed to non-parties Mays and Hunt indicating that he also attempted to obtain the records from those individuals. (*Id.* at PageID# 182–85.) Cunningham responded in opposition, arguing that the Court should deny Taylor's motion as premature because Cunningham timely responded to Taylor's requests for production by the parties' agreed-upon

---

[1] Under the "'prison mailbox rule[,]' . . . a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). Courts applying the prison mailbox rule assume, "absent contrary evidence," that an incarcerated person handed over a pleading to prison authorities "on the date he or she signed [it]." *Id.* Taylor signed the request for production on October 19, 2022. (Doc. No. 29.)

[2] December 4, 2021, is the day that Taylor alleges that raw sewage began to leak into his cell and December 28, 2021, is the day that Taylor alleges he was moved to a new cell. (Doc. No. 20.) Taylor alleges that he requested medical care for symptoms related to raw sewage exposure on December 27, 28, and 29, 2021. (*Id.*)

extended deadline. (Doc. No. 41.) In support of this argument, Cunningham attached a letter that his counsel sent to Taylor memorializing the parties' agreement to extend Cunningham's deadline to respond to the requests for production until December 23, 2022 (Doc. No. 41-1) and a copy of his responses and objections to Taylor's requests for production that Cunningham's counsel served on Taylor by mail on December 20, 2022 (Doc. No. 41-2). Taylor did not file an optional reply.

On January 20, 2022, Taylor filed an "Ex-Parte Motion for Production Order (Video Tape and Other Items in Possession of the State of Tennessee and/or It's Agents)[,]" which the Court construes as a motion to compel. (Doc. No. 46, PageID# 241.) Taylor asserts that he used the Tennessee Department of Corrections (TDOC) information inquiry process to request the surveillance video footage, medical records, and logbooks from non-parties Mays, Hunt, and Solomon but never received the records. (Doc. No. 46.) Taylor asks the Court to order non-parties Mays, Hunt, and Solomon to produce these records along with any incident reports concerning the events of December 4, 27, 28, and 29. (*Id.*) Taylor attached the same "inmate inquiry - information request" forms he previously filed *(Id.* at PageID# 244–47); a document titled "Plaintiff's List of Items for Production" directed to Mays, Hunt, Solomon, and a Jane Doe nurse (Doc. No. 46-1, PageID# 250); a motion for a status conference with the Court[3] (Doc. No. 46-1); and "Plaintiff's Second Set of Interrogatories to the Defendant" with a list of 21 questions directed to Cunningham (Doc. No. 46-1, PageID# 255). Cunningham responded in opposition, construing Taylor's motion as a motion to compel Cunningham's production of the surveillance video footage and Taylor's medical records. (Doc. No. 47.) Taylor did not file an optional reply.

---

[3] Taylor titled the document "Plaintiff's Second Set of Requests for Production of Evidence." (Doc. No. 46-1, PageID# 253.) The document does not include any requests for production. Instead, the document includes a request for a status conference. (Doc. No. 46-1.) Therefore, the Court construes the document as a motion for a status conference.

On March 3, 2023, Taylor filed a "Notice to the Court (Affidavit of Prejudice) Request for Court Order to Produce (Enforce Answer to Interrogatories)[,]" which the Court construes as a motion to compel. (Doc. No. 49, PageID# 271.) Taylor asserts that Cunningham has failed to respond to two sets of interrogatories and provides a copy of a document labeled "Plaintiff's First Set of Interrogatories to the Defendant[.]"(*Id.* at PageID# 274.) Cunningham responded in opposition, arguing that Taylor failed to confer with him before filing the motion and that Cunningham timely responded to Taylor's two sets of interrogatories. (Doc. No. 50.) Cunningham attached his responses to Taylor's interrogatories (Doc. No. 50-1) and a letter his counsel sent to Taylor regarding Cunningham's plans to respond to the interrogatories (Doc. No. 51-1). Taylor did not file an optional reply.

Taylor also filed a motion for a status conference with the Court (Doc. No. 43) and a motion for a jury trial (Doc. No. 48). Cunningham has not filed a response to either motion.

**II.     Legal Standards**

"[T]he scope of discovery is within the sound discretion of the trial court[.]" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (first alteration in original) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevant evidence in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ P. 26(b)(1) advisory committee's note to 2015 amendment ("A party

claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). A motion to compel discovery may be filed in a number of circumstances, including when "a party fails to answer an interrogatory submitted under Rule 33[,]" or "produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). "[A]n evasive or incomplete disclosure, answer, or response" is considered "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 326 F.R.D. at 485.

**III.    Analysis**

    **A.    Taylor's Motion to Compel Surveillance Video Footage, Medical Records, and Logbooks from Cunningham**

Taylor argues that Cunningham failed to comply with Taylor's requests for production of surveillance video footage, medical records, and logbooks.[4] (Doc. No. 39.) Taylor asks the Court to order Cunningham's production of Taylor's medical records and the surveillance video and logbooks from December 4, 27, 28, and 29, 2021. (*Id.*) Cunningham has responded in opposition. (Doc. No. 41.)

Cunningham argues that this motion is premature because the parties agreed to extend the deadline for Cunningham to respond to the discovery requests to December 23, 2022, and Taylor filed his motion on December 19, 2022. (*Id.*) Cunningham further argues that he served his responses and objections to Taylor's requests for production on December 20, 2022. (*Id.*)

---

[4]    It appears that Taylor filed his requests for production with the Court rather than serving them on Cunningham. (Doc. No. 29.) However, because Cunningham responded to Taylor's requests and has not objected to Taylor's method of conveying his requests, the Court will not deny Taylor's motions to compel on this ground. Taylor is advised that any future discovery requests should be served on Cunningham through his lawyer and should not be filed in the Court's docket unless provided as an exhibit to a motion for particular relief.

The Court agrees that Taylor's motion was premature when filed. *See, e.g.*, *Moonbeam Cap. Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 2:18-CV-12606, 2019 WL 952711, at *2 (E.D. Mich. Feb. 27, 2019) (finding that defendant's motion to compel was premature when motion was filed before deadline to respond to the discovery requests had passed), *objections overruled*, 2019 WL 11720198 (E.D. Mich. June 26, 2019). However, since Taylor filed the motion, Cunningham has served responses and objections to the discovery requests, has refused to produce the records in question, and has filed further briefing on the issues raised.[5] In the interest of judicial efficiency, and because the parties have fully addressed the issues raised, the Court declines to deny the motion to compel on the basis that the motion was premature. *See, e.g.*, *Doan v. Bergeron*, No. 15-cv-11725, 2016 WL 5346936, at *2 (D. Mass. Sept. 23, 2016) (finding that while plaintiff's motion to compel was premature when filed, it had become ripe for review and that "[n]o purpose would be served in requiring [plaintiff] to refile her motion to compel").

   **1. Surveillance Video Footage**

Taylor asks the Court to compel Cunningham's production of surveillance video footage from December 4, 27, 28, and 29, 2021. (Doc. No. 39.) Cunningham argues that, as "a correctional officer sued in his individual capacity, he is not the custodian of the footage requested, and that producing the footage, a confidential record, would create safety and security risks. (Doc. No. 47, PageID# 263.)

---

[5] Taylor filed a motion to compel non-parties Mays, Hunt, and Solomon to produce surveillance video footage, medical records, logbooks, and incident reports, which the Court will address later in this Memorandum Order. (Doc. No. 46.) Cunningham construed that motion as a motion to compel records from Cunningham and filed a response brief in opposition. (Doc. No. 47.) Given that both motions to compel concern surveillance video footage, medical records, and logbooks, the Court will consider that response brief in conducting the instant analysis.

Rule 34(a) of the Federal Rules of Civil Procedure requires the production of requested documents that are in the "possession, custody, or control" of the party upon whom the request is served. Fed. R. Civ. P. 34(a)(1). However, district courts in this Circuit have found that because prison officials sued in their individual capacities "'can generally obtain documents from the department of corrections by requesting them[,]'" "'they, therefore, *have constructive control over the requested documents and must produce them.*'" *Sublett v. Henson*, No. 5:16-CV-00184, 2018 WL 3939333, at *3 (W.D. Ky. Aug. 16, 2018) (citation omitted) *Belden v. Jordan*, No. 3:16CV-P511, 2017 WL 3485006, at *2 (W.D. Ky. Aug. 14, 2017) (finding that prison official sued in individual capacity had practical ability to obtain surveillance video footage and documents from the department of corrections and granting plaintiff's motion to compel official to produce footage and documents); *see also, e.g.*, *Cooper v. Bower*, No. 5:15-CV-P249, 2017 WL 11717027, at *2 (W.D. Ky. Apr. 6, 2017) (disagreeing with prison officials sued in their individual capacities who claimed that they did not have custody or control of department of corrections documents and finding that the defendants had the practical ability to obtain the documents in question). *See also, e.g.*, *Wick v. Angelea*, No. 2:09-CV-1027, 2013 WL 4432394, at *2–3 (E.D. Cal. Aug. 16, 2013) (granting plaintiff's motion to compel internal affairs report from prison officials sued in individual capacities because defendants had constructive control over documents as they could request them from department of corrections).

Cunningham cites out-of-circuit cases to support his argument that a corrections officer sued in his or her individual capacity does not have control over institutional records. (Doc. No. 47.) For example, Cunningham relies on *Greene v. Fulton*, 157 F.R.D. 136, 142 (D. Maine 1994), in which the court found that the fact that the plaintiff sued the defendant police officer in his official capacity was critical to finding that the defendant had "control" over police records.

(*Id.*) Cunningham also relies on *Garner v. City of Wellston*, No. 4:17-CV-01674, 2018 WL 5995241 (E.D. Mo. Nov. 15, 2018), in which the court found that granting the plaintiff's motion to amend her complaint to specify individual, rather than official, capacity claims against the defendant officers would "materially alter . . . the scope of discovery." (*Id.*) Neither of these cases directly addresses the question of an individual officer's practical ability to produce institutional records. Cunningham is employed by TDOC and represented by the Tennessee Attorney General's Office. Cunningham thus has the practical ability through counsel to obtain video footage from TDOC; he therefore has "constructive control over the requested documents and must produce them.'" *Sublett*, 2018 WL 3939333, at *3 (emphasis and citation omitted).

Cunningham also argues that producing the footage would require disclosing records "containing information which the security of institutions requires to be maintained confidential, including documents otherwise protected under Tenn. Code Ann. § 10-7-504(m)" which, "to the extent any such footage exists, carries with it an unacceptable risk to institutional security and the safety of facility personnel." (*Id.* at PageID# 261.) Cunningham argues that providing Taylor the confidential security footage would create "an unacceptable risk to institutional security and the safety of facility personnel[,]" and that courts routinely order the sealing of similar records when produced.[6] (*Id.*)

---

[6] The Tennessee Public Records Act (TPRA) states that "[i]nformation and records that are directly related to the security of any government building shall be maintained as confidential and shall not be open to public inspection." Tenn. Code Ann. § 10-7-504(m)(1). To the extent that Cunningham argues that the TPRA renders the surveillance video footage non-discoverable, that argument fails because the fact that state "records are not subject to 'public inspection' does not render them inaccessible to parties involved in active litigation." *Liebman v. Methodist Le Bonheur Healthcare*, No. 3:17-0902, 2020 WL 12895960, at *3 (M.D. Tenn. Nov. 4, 2020) (denying motion to quash defendant's subpoena for personnel file and finding that § 10-7-504 was inapplicable because defendant was not making public records request and the TPRA does not make records confidential to the public unavailable to courts).

Cunningham is correct that courts routinely consider weigh the importance of preserving the safety and security of incarcerated people and staff at correctional institutions in addressing discovery requests for institutional information. However, while the courts in the cases Cunningham cites recognize the importance of safety and security, courts also recognize incarcerated litigants' right to access relevant evidence to support their claims. *See, e.g.*, *Shadburne v. Bullitt Cnty.*, No. 3:17CV-00130, 2017 WL 6391483, at *2–3 (W.D. Ky. Dec. 14, 2017) (ordering defendants to produce jail policy manual requested by plaintiff and addressing defendants' security concerns by directing them to file proposed protective order limiting disclosure of manual). "While the Court accepts the fact that it poses a security risk to the prison should surveillance video get into the hands of a prisoner, it is equally important that litigants get the discovery to which they are entitled." *Carter v. Mandy*, No. 21-11568, 2022 WL 16796626, at *2 (E.D. Mich. Nov. 8, 2022) (granting in part pro se plaintiff's motion to compel prison surveillance video footage and addressing security concerns by ordering defendants to either make the video available to plaintiff for one-time viewing or provide plaintiff with still-shot photographs captured from the video recording).

Therefore, the Court must consider whether Cunningham can produce the surveillance video footage in a way that balances safety considerations with Taylor's need to view the footage under circumstances sufficient to allow him to prepare his case. Taylor seeks the footage to show that his cell in D-pod overflowed with sewage and leaked into an adjacent cell and the day area. (Doc. No. 29.) Taylor also seeks the footage to show that Cunningham "failed to observe" Taylor and "maintain the [g]uidelines policy" and that, once Taylor was transferred to B-pod, he did not

10
Case 3:22-cv-00296    Document 59    Filed 06/05/23    Page 10 of 15 PageID #: 344

receive any medical care.[7] (*Id.* at PageID# 146.) This footage is relevant to Taylor's Eighth Amendment conditions of confinement and deliberate indifference to medical needs claims. Cunningham's safety and security concerns, such as a fear that Taylor will "stud[y]" the footage "to discover the security measures undertaken by [Riverbend] staff" can be addressed by allowing Taylor to review the footage but not possess it. (Doc. No. 47, PageID# 261.) Cunningham's counsel shall arrangements for Taylor to view the footage within thirty days of the date of this Memorandum Order. If Taylor intends to file any of the footage as an exhibit to briefing as the case progresses, he may request that Cunningham's counsel file the appropriate footage with a motion to file it under seal, if appropriate.

Therefore, Taylor's motion to compel production of surveillance video footage will be granted in part and Cunningham will be ordered to make the surveillance footage in question from December 27, 28, and 29, 2021,[8] available to Taylor for viewing no later than thirty days from the date of this Memorandum Order.

---

[7] Taylor also asserts that the video surveillance footage will also show that, "once [Taylor] got over to another cell in B-pod, no property was given to [him]." (Doc. No. 29, PageID# 146.) However, in its screening order, the Court found that Taylor's allegations that Cunningham left him to freeze without a blanket or his personal effects did "not support a viable Eighth Amendment claim." (Doc. No. 24, PageID# 119.)

[8] The Court notes that Taylor's original request for production sought surveillance video footage from December 27, 28, and 29, 2021, and did not include a request for footage from December 4, 2021. (Doc. No. 29.) Therefore, Cunningham could not have been expected to produce footage from December 4, 2021. See, e.g., Est. of Patterson v. Cont. Freighters, Inc., No. 5:18-CV-00174, 2019 WL 1223311, at *4–5 (W.D. Ky. Mar. 15, 2019) (denying plaintiffs' motion to compel records when records requested in motion to compel were "broader and more expansive" than those sought in the requests for production).

## 2. Medical Records

Taylor asks the Court to compel Cunningham's production of Taylor's medical records.[9] (Doc. No. 39.) Cunningham argues that he cannot produce Taylor's medical records because he is not the custodian of Taylor's medical records.[10] (Doc. No. 47.) For the same reason articulated regarding the production of video footage, the Court finds that Cunningham has the practical ability to produce Taylor's medical records from the time of his incarceration at Riverbend. Taylor's motion to compel production of his medical records will be granted.

## 3. Logbooks

Taylor argues that Cunningham has failed to produce requested logbooks for Unit 1 of B-pod for December 28, 2021, and Unit 1 of D-pod for December 4, 27, 28, and 29, 2021, and asks the Court to compel Cunningham to produce these records. (Doc. No. 39.) Cunningham has not made any arguments regarding the logbooks in his response briefs (Doc. Nos. 41, 47), but initially objected to producing the logbooks because they are considered confidential under Tenn. Code Ann. § 10-7-504(m) and producing them would create a security risk (Doc. No. 41-2). Again, the Court must balance Taylor's need for the evidence with the safety and security issues Cunningham raises. *See Carter*, 2022 WL 16796626, at *2. The logbooks are relevant to Taylor's Eighth Amendment claims because they could show Cunningham's presence in D-pod and B-pod during

---

[9] Taylor's characterization of the medical records he seeks varies. (Doc. No. 39.) In one instance, he broadly characterizes the records requested as "Plaintiff's medical records[.]" (*Id.* at PageID# 180.) In another instance, he characterizes the records requested as "medical records of the incident on dates" December 4, 27, 28, and 29, 2021. (*Id.* at PageID# 181.) The Court construes the motion as requesting his complete medical records from his incarceration at Riverbend.

[10] Cunningham notes that Taylor's original request for production of medical records was a broad one for "[a]ny medical records" that did not specify whose medical records were sought. (Doc. No. 47, PageID# 264.) However, Cunningham acknowledges that Taylor's motion to compel specifies that Taylor seeks his own medical records. (Doc. No. 47.)

Taylor's alleged cell leak, transfer to another cell, and requests for medical attention. The Court finds that Taylor's need for evidence and Cunningham's safety and security concerns may be balanced if Cunningham produces the portions of the logbooks in question showing Cunningham's presence in the identified locations on the identified dates with all other information redacted. Taylor's motion to compel production of the logbooks will be granted in part.

### B. Taylor's Motion to Compel Surveillance Video Footage, Medical Records, Logbooks, and Incident Reports from Non-Parties Mays, Hunt, and Solomon

Taylor argues that he used the Tennessee Department of Corrections (TDOC) information inquiry process to request the surveillance video footage, medical records, and logbooks from non-parties Mays, Hunt, and Solomon, but did not receive the records. (Doc. No. 46.) Taylor asks the Court to order Mays, Hunt, and Solomon to produce the requested surveillance video footage, medical records, "all nurses' notes, Doctor's recordings[,]" logbooks, and any incident reports concerning the events of December 4, 27, 28, and 29. (*Id.* at PageID# 242.) Cunningham responded in opposition, construing the motion as a motion to compel him to produce these records. (Doc. No. 47.)

Discovery may be obtained from non-parties through the use of a subpoena under Rule 45. Fed. R. Civ. P. 45(a)(1)–(3). Taylor has not subpoenaed Mays, Hunt, or Solomon, and "the Court cannot grant a motion to compel discovery from a non-party when no underlying subpoena exists." *Shipes v. Amurcon Corp.*, Civ. Action No. 10-14943, 2012 WL 1183686, at *1 (E.D. Mich. Apr. 9, 2012) (citing *Smith v. Florida Dep't of Corr.*, 369 F. App'x 36, 38 (11th Cir.2010)); *see also, e.g.*, *Hansen v. Dir., O.D.R.C.*, No. 2:12-cv-773, 2013 WL 1915109, at *1 (S.D. Ohio May 8, 2013) (finding that subpoena is the appropriate vehicle to compel third party to produce documents); *Colton v. Scutt*, No. 10-CV-13073, 2012 WL 5383115, at *3 (E.D. Mich. Nov. 1, 2012) (finding that court could not compel production of documents from non-party prison that

had not been properly served with a subpoena), *aff'd sub nom. Colton v. Cohen*, 2013 WL 3724835 (E.D. Mich. July 15, 2013).

Taylor did not subpoena the production of these documents by Mays, Hunt, or Solomon. Therefore, his motion to compel surveillance video footage, medical records, logbooks, and incident reports from them must be denied.

### C. Taylor's Motion to Compel Cunningham's Interrogatory Responses

Taylor argues that he served two sets of interrogatories on Cunningham and that Cunningham has failed to respond to them. (Doc. No. 49.) Taylor asks the Court to compel Cunningham to respond to the interrogatories. (*Id.*) Cunningham argues that Taylor's motion should be denied because Taylor failed to confer with Cunningham before filing the motion and because Cunningham timely served Taylor with responses and objections to each set of interrogatories. (Doc. No. 50.) It appears that Cunningham has responded to both sets of interrogatories. Taylor's motion is therefore rendered moot.

### D. Taylor's Motions for a Status Conference

Taylor filed two motions for a status conference. In his first motion for a status conference, Taylor notes the pending motions to appoint counsel and ongoing discovery disputes. (Doc. No. 43.) Taylor also notes that he would like to discuss potential dates for a settlement conference. (*Id.*) Taylor included a nearly identical request for a status conference as an attachment to one of his motions to compel. (Doc. No. 46-1.) Cunningham has not responded in opposition.

Because this Memorandum Order and an accompanying order regarding Taylor's motions to appoint counsel address the pending motions in Taylor's case, the Court finds that a status conference is not necessary. If the parties have outstanding discovery issues after this Memorandum Order, they should seek to resolve them through the meet and confer process. If the

meet and confer process is unsuccessful, the parties may request a discovery dispute resolution conference Taylor's motions for a status conference will therefore be denied without prejudice.

### E. Taylor's Motion for a Jury Trial

Taylor filed a motion for a jury trial (Doc. No. 48), to which Cunningham did not respond. Cunningham has demanded a jury trial (Doc. No. 30), and Judge Trauger has entered a jury-trial setting order (Doc. No. 36). Therefore, Taylor's motion for a jury trial will be found moot.

## IV. Conclusion

Taylor's motion to compel Cunningham's production of surveillance video footage, medical records, and logbooks (Doc. No. 39) is GRANTED IN PART and Cunningham is ORDERED to make the surveillance footage from December 27, 28, and 29, 2021, available to Taylor for viewing no later than thirty days from the date of this Memorandum Order.

Taylor's motion to compel non-parties Mays, Hunt, and Solomon's production of Taylor's surveillance video footage, medical records, logbooks, and incident reports (Doc. No. 46) is DENIED.

Taylor's motion to compel Cunningham's responses to two sets of interrogatories (Doc. No. 49) is FOUND MOOT.

Taylor's motions for a status conference (Doc. Nos. 43, 46-1) are DENIED WITHOUT PREJUDICE and his motion for a jury trial (Doc. No. 48) is FOUND MOOT.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge