UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRENCE MONTREL TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN CUNNINGHAM,<br><br>    Defendant. | Case No. 3:22-cv-00296<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se and *in forma pauperis* Plaintiff Terrence Montrel Taylor's incarceration at Riverbend Maximum Security Institution (Riverbend) in Nashville, Tennessee. (Doc. Nos. 1, 20.) Taylor's amended complaint asserts Eighth Amendment conditions of confinement and deliberate indifference to his serious medical needs claims against Defendant John Cunningham, a Riverbend correctional officer, alleging that Cunningham failed to address the long-term presence of sewage in Taylor's cell and denied his request to be evaluated by medical staff for the symptoms he experienced because of exposure to that sewage. (Doc. No. 20.) Cunningham has moved for summary judgment on Taylor's claims. (Doc. No. 65.) Taylor filed a response in opposition (Doc. No. 74) and Cunningham filed a reply (Doc. No. 78). Considering the record evidence and the parties' arguments, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant Cunningham's motion for summary judgment.

I.      **Background**

   A.      **Factual Background[1]**

Taylor is incarcerated at Riverbend and, in December 2021, was housed in restrictive housing Unit 1, D-Pod, cell 112. (Doc. Nos. 64, 74-2.) Cunningham was employed as a

---

[1]     The facts in this section are drawn from Taylor's unverified amended complaint and exhibits (Doc. No. 20); Taylor's unsworn affidavit submitted in support of his motion for summary judgment (Doc. No. 74-1); Cunningham's statement of undisputed material facts (Doc. No. 64) and Taylor's response (Doc. No. 74-2); the sworn declarations of Cunningham (Doc. No. 66-1) and non-party Dr. Kenneth Wiley (Doc. No. 66-2), who is currently employed by the Tennessee Department of Correction (TDOC) as associate chief medical officer and was TDOC's associate medical director during the relevant time period; and excerpts of Taylor's medical records (Doc. No. 66-3).

Taylor's complaint is not verified and thus cannot be considered as evidence in support of his summary judgment response. *See Burley v. Sumner Cnty. 18th Jud. Drug Task Force*, No. 3:19-cv-00118, 2021 WL 852194, at *4 (M.D. Tenn. Feb. 17, 2021), *report and recommendation adopted by* 2021 WL 848714 (M.D. Tenn. Mar. 5, 2021). The Court includes some of Taylor's unverified allegations to provide relevant context. Likewise, Taylor's original complaint (Doc. No. 1) is not verified. *See Jackson v. Heyns*, No. 1:13-CV-636, 2015 WL 5691168, at *1 (W.D. Mich. Sept. 28, 2015) (finding that complaint was "not properly verified" because it did not comply with the exacting language of § 1746).

It appears that Taylor attempted to verify his affidavit in support of his response in opposition to Cunningham's motion for summary judgment. (Doc. No. 74-1.) The affidavit includes the statements "VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY AND SELF NOTARIZATION PURSUANT TO 28 U.S.C.A. § 1746. (Doc. No. 74-1, PageID# 490.) Although Taylor references the federal verification statute, the language Taylor includes here is insufficient to invoke that statute. Section 1746 requires using language "in substantially the following form: . . . I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C.A § 1746(2*). See Tolson v. Washburn*, Case No. 3:19-cv-00175, 2022 WL 18028284, at *2 n.3 (M.D. Tenn. Dec. 30, 2022) (collecting cases). Because Taylor has not included a statement that the content of his affidavit is "true and correct," he has not met the statute's material requirements. *See, e.g., Bell v. Michigan*, Case No. 1:19-cv-233, 2022 WL 16733015, at *5 (W.D. Mich. Aug. 22, 2022) (finding that language that did not include unqualified declaration that statements were "true and correct" did not meet statutory requirements), *report and recommendation adopted by* 2022 WL 5426549 (W.D. Mich. Oct. 7, 2022); *Smith v. Washington*, Case No. 1:17-cv-285, 2018 WL 6981149, at *2 n.2 (W.D. Mich. Dec. 4, 2018) (finding that plaintiff's failure to declare without qualification that statements were "true and correct" meant that document did not comply with 28 U.S.C. § 1746(2)), *report and recommendation adopted by* 2019 WL 131997 (W.D. Mich. Jan. 8, 2019). Again, the

Corrections Sergeant at Riverbend during the same time. (Doc. Nos. 64, 74-2.) Taylor states that he had an ongoing feud with the inmate housed in the next cell and that he and his neighbor "purposefully shoved foreign objects down the shower drains in their respective cells for the purpose of flooding the other inmate's cell." (Doc. No. 64, PageID# 402, ¶ 3; Doc. No. 74-2.) Taylor alleges that, from December 4, 2021 to December 28, 2021, his "cell floor flooded with unsanitary sewer water and debris (feces and urine)[,]" which produced "noxious fumes [that] went on for over 23 days continuously" and caused him to suffer "headaches, coughing, eye irritation, skin rash[,]" as well as "stress and anxiety." (Doc. No. 20, PageID# 81.) Taylor alleges that he "became disable[d] [and] incapacitated" for the time he was exposed to the sewage. (Doc. No. 74-1, PageID# 2, ¶ 6.) Taylor states that he requested "maintenance, cleaning supplies, and help" from Cunningham to address the sewage but Cunningham did not provide the requested aid. (Doc. No. 20, PageID# 88.) Taylor alleges that he "was not moved from [his] cell until December 28, 2021." (*Id.* at PageID# 81.) Taylor also states that Cunningham denied Taylor's "numerous requests" to be examined by medical staff on December 27, 28, and 29, 2021, for treatment of symptoms related to the sewage leak. (*Id.*)

On December 29, 2021, Taylor filed a grievance complaining that his shower drain had been leaking and flooding his cell with "unclean, unhealthy dirty water" since December 4, 2021, and that he was forced to stay in that cell until December 28, 2021. (Doc. No. 20, PageID# 99.) Taylor alleges that this caused him "to go on food strike" and that Cunningham did not notify any mental health officials or nurses of that fact. (*Id.*) Taylor asked Cunningham to bring in a unit manager, but Cunningham refused and instead "took matter[s]" in his own hands by packing up

---

Court includes these facts to provide context and not as evidence supporting Taylor's opposition to Cunningham's motion.

Taylor's personal belongings and moving Taylor to a new cell without his property. (*Id.*) Taylor addressed these issues in a grievance and asked that Cunningham "be remove[d]" from TDOC. The grievance was "deemed inappropriate" and denied, but a supervisor responded on January 24, 2022, that "[t]he maintenance issues have been corrected and [that] . . . Cunningham has been removed from the unit." (*Id.* at PageID# 97.)

For his part, Cunningham states that, sometime in December 2021, "Taylor came out of his cell for recreation and informed [him] that there was water coming up from his shower drain[.]" (Doc. No. 66-1, PageID# 425, ¶ 5.) On "[the] same day[,]" Cunningham informed maintenance of the issue, and Taylor was "moved [out of his cell and placed in] a recreation cell while the shower drain was [being] repaired." (*Id.* at ¶ 6.) The "maintenance worker resolved the problem that same day and fixed the shower drain in Taylor's cell." (*Id.*)

Cunningham further states that, in accordance with TDOC policy, inmates housed in restrictive housing "are checked on regularly by medical staff." (Doc. No. 64, PageID# 405, ¶ 14; Doc. No. 74-2, PageID# 495, ¶ 14.) Taylor was "evaluated by a nurse every day during the month of December 2021." (Doc. No. 64, PageID# 405, ¶ 15; Doc. No. 66-3; Doc. No. 74-2, PageID# 495, ¶ 15.) The nurse's "daily evaluations of Taylor" occurred "at the door of his cell, with Taylor and the nurse conversing through the door." (Doc. No. 64, PageID# 506, ¶ 16; Doc. No. 74-2, PageID# 496, ¶ 16.) The record of Taylor's daily medical visits does not include any notation that there was sewage in Taylor's cell or that Taylor complained about the presence of sewage in his cell. (Doc. Nos. 64, 66-3, 74-2.) Dr. Kenneth Wiley states in a sworn declaration that the long-term presence of sewage in an inmate's cell would constitute a health hazard that medical staff would document in the medical notes. (Doc. Nos. 66-2, 64, 74-2.)

B. **Procedural History**

1. **Taylor's Pleadings**

Taylor initiated this action on February 6, 2022, by filing a complaint in the Eastern District of Tennessee asserting § 1983 claims against Cunningham.[2] (Doc. No. 1.) Taylor filed an application to proceed *in forma pauperis* and two motions to transfer the case to the Middle District of Tennessee. (Doc. Nos. 6, 7, 8.) The Eastern District granted Taylor's application to proceed *in forma pauperis* and transferred the action to this Court. (Doc. Nos. 9, 10.) This Court then screened Taylor's complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e. (Doc. No. 18.) The Court found that Taylor had failed to state a claim on which relief could be granted and that his complaint was subject to dismissal but granted Taylor leave to file an amended complaint within thirty days. (*Id.*)

Taylor then filed an amended complaint against Cunningham, Correctional Officer Julie W. Smith and Correctional Unit Manager Robin Fish. (Doc No. 20.) The Court again screened Taylor's complaint and found that Taylor had stated colorable Eighth Amendment claims against Cunningham in his individual capacity regarding events related to the sewage leak and denial of medical treatment. (Doc. No. 24.) .) The Court dismissed Taylor's other claims against Cunningham and all of Taylor's claims against Smith and Fish. (*Id.*) Cunningham appeared and answered Taylor's amended complaint. (Doc. Nos. 27, 30, 32.)

---

[2] Under the "prison mailbox rule[,] . . . a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). The rationale for this rule is that "pro se prisoners have no control over delays between the prison authorities' receipt of [a pleading] and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Houston v. Lack*, 487 U.S. 266, 273–74 (1988) (emphasis in original). Courts assume, "absent contrary evidence," that an incarcerated person handed over a pleading to prison authorities "on the date he or she signed [it]." *Brand*, 526 F.3d at 925. All references herein to Taylor's filings use the dates on which Taylor signed his filings.

In the remaining claims of his amended complaint, Taylor alleges that Cunningham violated his Eighth Amendment right to adequate medical care while he was incarcerated at Riverbend by denying him medical treatment and failing to fix the sewage leak from December 27 to 29, 2021. (Doc. Nos. 20, 24.) Taylor also alleges that Cunningham violated his Eighth Amendment right not to be subjected to inhumane conditions of confinement by refusing to take any action to address the sewage leak for more than three weeks, from December 4 to December 28, 2021. Taylor's amended complaint seeks $10,000.000 in damages from Cunningham. (*Id.*)

### 2. Cunningham's Summary Judgment Motion

Cunningham filed a motion for summary judgment (Doc. No. 65) supported by a memorandum of law (Doc. No. 66), a statement of undisputed material facts (Doc. No. 64), his sworn declaration (Doc. No. 66-1), Wiley's sworn declaration (Doc. No. 66-2), and excerpts of Taylor's Riverbend medical notes (Doc. No. 66-3). Cunningham argues that he is entitled to summary judgment on Taylor's Eighth Amendment claims because "[t]he evidence in the record conclusively establishes that [Taylor] was not subjected to long-term exposure to sewage[,]" there is "no evidence in the record . . . establishing that [Taylor] suffered an actual injury" as is required to recover monetary damages, and the "evidence shows that [Taylor] was not denied medical care [but] was evaluated daily by nurse and failed to once raise a complaint regarding his alleged injuries." (Doc. No. 66, PageID# 419, 421, 423.)

Taylor responded to Cunningham's motion by filing "Plaintiff's Memorandum Order in Opposition of Defendant's Motion for Summary Judgment to Dismiss" (Doc. No. 68, PageID# 434), a "Motion to Compel (Production of Video Tape and Other Evidence)" (Doc. No. 69, PageID# 439), a "Motion for Electronic Teleconference with Magistrate (In Camera) to Settle Affidavit of Prejudice Issues Thwarting Plaintiff's Efforts to Comply with the Court's Scheduling Order" (Doc. No. 70, PageID 443), and an "Affidavit of Prejudice" (Doc. No. 71, PageID# 446).

Cunningham responded in opposition to Taylor's filings. (Doc. No. 72.) The Court found that Taylor's motions largely restated discovery-related arguments made in earlier motions (Doc. Nos. 39, 46, 49) that the Court had granted in part and denied in part (Doc. No. 59) and that Cunningham had addressed again in later filings. (Doc. No. 73.) The Court also found that Taylor had not adequately responded to Cunningham's motion for summary judgment or statement of undisputed material facts. (*Id.*) Recognizing that Taylor's filings addressed motions to compel that were outstanding when his response to Cunningham's motion was due, the Court afforded Taylor the opportunity to file an opposition to Cunningham's motion. (*Id.*)

Taylor then filed a response in opposition to Cunningham's motion (Doc. No. 74) supported by his unsworn affidavit (Doc. No. 74-1), a response in opposition to Cunningham's statement of undisputed material facts (Doc. No. 74-2), and copies of Cunningham's motion for summary judgment (Doc. No. 74-3) and the Court's memorandum order denying Taylor's motions to compel (Doc. No. 73). Cunningham did not file an optional second reply in support of his motion.

## II.  Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

### III. Analysis

#### A. Local Rule 56.01 and the Defendant's Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Further, "[t]he response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." *Id.* Pro se parties are not excused from complying with these rules. *See* M.D. Tenn. R. 56.01(b)–(c). Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 31, PageID# 159); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

Cunningham filed a statement of undisputed material facts that complies with the requirements of Local Rule 56.01(b) and includes particular record citations. (Doc. No. 64.) Taylor filed a response to Cunningham's statement of disputed material facts in which he addresses each of Cunningham's facts with one of two stock responses: that a fact is "undisputed for the purpose of ruling on the motion for summary judgment only" or that it is "[d]isputed by facts filed in Grievance attached to Amended Complaint." (Doc. No. 74-2 (alteration original).) The grievance is the only record evidence that Taylor identifies in his response to Cunningham's statement of undisputed material facts.

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. supp. Apr. 2023). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2023). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. supp. Apr. 2023) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that Cunningham has offered in support of his motion to determine if it is sufficient to satisfy his initial summary judgment burden with respect to each of Taylor's claims before evaluating any response in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *see also Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim—timely notice—but . . . d[id] not actually do so"). Under Rule 56(c)(3), the Court may also look to other materials in the record in its review. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

### B. Cunningham's Motion for Summary Judgment

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Taylor alleges that Cunningham was deliberately indifferent to inhumane conditions of confinement and his serious medical needs in violation of the Eighth Amendment.

Cunningham has not disputed that he is a state actor for purposes of liability under § 1983, and the Court finds that Cunningham acted under color of state law within the meaning of the statute. *See, e.g.*, *Meadows v. Putnam Cnty.*, No. 2:19-cv-00006, 2020 WL 1532311, at *3 (M.D. Tenn. Mar. 31, 2020) (finding that jail administrator and jail corrections officer acted under color of state law and were therefore persons subject to suit under § 1983); *Lee v. Smithson*, No. 3:18-cv-01203, 2018 WL 6832094, at *2 (M.D. Tenn. Dec. 28, 2018) (finding that, "[i]n carrying out his duties as an employee of [the jail], [c]orporal [defendant] was a 'state actor' under Section 1983"). The only question before the Court at summary judgment is whether Cunningham has shown no genuine issues of material fact that he did not violate Taylor's Eighth Amendment rights.

### 1. Eighth Amendment Deliberate Indifference to Serious Medical Needs Claim

Taylor claims that Cunningham violated his Eighth Amendment right to adequate medical care by denying Taylor's request to be seen by medical staff on December 27, 28, and 29, 2021. (Doc. Nos. 1, 20.) Cunningham argues that he is entitled to summary judgment on this claim because Taylor cannot show that Cunningham denied any requests from Taylor to be seen by medical staff on those days. (Doc. No. 66.)

The Eighth Amendment, which applies to state governments through the Fourteenth Amendment, "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). A deliberate indifference claim against a prison official has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires a plaintiff to show the existence of a

12

Case 3:22-cv-00296   Document 86   Filed 02/07/24   Page 12 of 19 PageID #: 604

"sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the actor had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Cunningham has filed Riverbend restrictive housing medical notes showing that Taylor was evaluated in his cell by a nurse every day of December 2021. (Doc. No. 66-3.) The medical notes form records the date and time of the nurse's visit, provides codes to record the inmate's comments and observed behavior, and includes a space for the nurse to include any comments. (*Id.*) The entries for December 27, 28, and 29, 2021, reflect that Taylor was "up at door" and "talking" at the time of the nurse's visit. (*Id.* at PageID# 431.) They do not show that Taylor requested a sick call or made any complaints. (*Id.*) Wiley corroborates this in his declaration, stating that medical notes memorializing the daily evaluations "at the door of Taylor's cell" do not include any "indication [that] medical staff observ[ed] . . . Taylor's cell exhibiting a problem with

plumbing or sewage." (Doc. No. 66-2, PageID# 428, ¶¶ 6, 7.) Finally, Cunningham states by declaration that he has "never refused mental health or medical treatment to inmate Taylor" and that he "has always notified the proper authorities anytime [he] received a request from an inmate to be seen by mental health or the medical department." (Doc. No. 66-1, PageID# 426, ¶¶ 8, 9.)

Construing the record in the light most favorable to Taylor, the Court finds that Cunningham has carried his initial burden to show the absence of a genuine dispute of material fact that he denied Taylor adequate medical care.

The burden therefore shifts to Taylor to show more than "[t]he mere existence of a scintilla of evidence in support of" his position. *Anderson*, 477 U.S. at 252. Taylor disputes that Cunningham did not refuse to request medical treatment for him during the subject three-day period. (Doc. Nos. 74, 74-1, 74-2.) In support, Taylor points to his December 29, 2021 grievance in which he states that the dirty water that flooded his cell on December 27, 2021 "cause[d] . . . [him] to go on food strike" and that "not [once] did . . . Cunningham notify any unit manager, mental health [official], or any nurses." (Doc. No. 20, PageID# 99.)

Construed in the light most favorable to Taylor, the grievance establishes that he went on a food strike to protest the conditions of his cell, that Cunningham knew about the food strike and its purpose, and that Cunningham did not notify any medical personnel about what Taylor was doing and why. It does not establish that Cunningham denied his request to be seen by medical staff for his "headaches, coughing, eye irritation, skin rash," which is the basis of his Eighth Amendment claim. (Doc. No. 20, PageID# 81.) It also does not create a genuine issue of material fact that the nurses observed Taylor experiencing any medical issues on their daily visits, that Taylor made complaints or requested a sick call, or that Cunningham refused Taylor's request for medical assistance. Taylor has not pointed to any other record evidence sufficient to create a

genuine issue of material fact as to any element of his deliberate indifference claim. *See* Fed. R. Civ. P. 56(c) (requiring that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

The Court finds that Taylor's assertions are not sufficient to create a genuine dispute of material fact that Cunningham knew of and disregarded a substantial risk of harm. Accordingly, Cunningham is entitled to summary judgment on Taylor's Eighth Amendment claim of deliberate indifference to serious medical needs.

### 2. Eighth Amendment Inhumane Conditions of Confinement Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on inmates. While the Constitution "does not mandate comfortable prisons," it does not "permit inhumane ones, and it is now settled that 'the treatment a[n] [inmate] receives in prison and the condition under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer*, 511 U.S. at 832 (quoting *Helling v. McKinney*, 509, U.S. 25, 31 (1993) (applying deliberate indifference standard to conditions-of-confinement claims)). To demonstrate a constitutional violation with respect to conditions of confinement, an inmate must satisfy both an objective and subjective inquiry. *Farmer*, 511 U.S. at 834. The objective component requires an inmate to prove that he was denied the "minimal civilized measure of life's necessities." *Id.* The subjective component requires an inmate to prove that the prison officials acted with "deliberate indifference" by showing that the official knew the inmate faced a "substantial risk of serious harm" and, armed with such knowledge, disregarded that risk by failing to take reasonable measures to address it. *Farmer*, 511 U.S. at 828, 834, 837; *see also Helling v. McKinney*, 509 U.S.

at 35–37. The Sixth Circuit has found that "[c]onditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).

Cunningham states by affidavit that, "[s]ometime in December 2021, [ ] Taylor came out of his cell for recreation and informed [him] that there was water coming up from his shower drain[.]" (Doc. No. 66-1, PageID# 425, ¶ 5.) Cunningham further states that, on "[the] same day," he informed maintenance of the issue, and Taylor was "moved [out of his cell and placed in] a recreation cell while the shower drain was [being] repaired." (*Id.* at ¶ 6.) Cunningham states that the "maintenance worker resolved the problem that same day and fixed the shower drain in Taylor's cell." (*Id.*) Again, Cunningham's statements are corroborated by Wiley's declaration testimony that the medical notes from December 2021 do not show any "indication [that] medical staff observ[ed] . . . Taylor's cell exhibiting a problem with plumbing or sewage" and that, "[i]f medical staff would have observed indications of the long-term presence of sewage in Taylor's cell, this would constitute a health hazard which would have been documented in the comments section of the record." (Doc. No. 66-2, PageID# 428, ¶¶ 7, 8.) Wiley also states that, "[i]f medical staff would have received a complaint from Taylor regarding the long-term presence of sewage in Taylor's cell . . .[a]ppropriate steps would then have been taken to remedy the situation and provide Taylor with appropriate medical treatment." (*Id.* at ¶ 8.)

Construing the record evidence in the light most favorable to Taylor, the Court finds that Cunningham has carried his initial burden to show the absence of a genuine dispute of material fact that Cunningham knew of and disregarded a substantial risk of serious harm to Taylor.

The burden therefore shifts to Taylor once more to show more than "[t]he mere existence of a scintilla of evidence in support of" his position. *Anderson*, 477 U.S. at 252. Taylor again relies

16
Case 3:22-cv-00296    Document 86    Filed 02/07/24    Page 16 of 19 PageID #: 608

only on the December 29, 2021 grievance to dispute Cunningham's asserted facts. In the grievance, Taylor states that his shower drain "stopped up" beginning on December 4, 2021; that he informed Cunningham of that fact and asked him to notify the unit manager; that Cunningham refused to do so; and that, at 2:35 p.m. on December 27, 2021, the overflow from the shower drain flooded his cell and the area outside his cell. (Doc. No. 20, PageID# 99.) Taylor states that, from December 4 to December 28, he was forced "to eat in a[n] unclean [cell,] dirty water everywhere . . . from out the shower drain . . . ." (*Id.* at PageID# 92.) He further states that, on December 28, he refused to go back into the cell and was moved to a new cell and that Cunningham packed up all of his property and moved it. (*Id.*) Taylor does not state in the grievance that he suffered any injury from his exposure to the dirty water. Construed in the light most favorable to Taylor, the grievance establishes that his shower drain clogged on December 4; that Cunningham did not fix it or notify a unit manager of the problem; that the drain overflowed on December 27; and that Taylor moved to a new cell on December 28. The attached grievance response shows that the "maintenance issues have been corrected" and "Cunningham has been removed from the unit." (*Id.*)

This Court addressed analogous facts in *Keel v. Davidson County Sheriff's Office*, Civ. Action. No. 3:13-1145, 2015 WL 799724 (M.D. Tenn. Feb. 25, 2015). There, the incarcerated plaintiff submitted a grievance on September 11, 2013, complaining that sewage leaked into his cell when it rained. *Id.* at *2. The grievance was sustained and a leaky toilet on the floor above Keel's cell was identified as the culprit on October 1, 2013. *Id.* Keel testified that he suffered no physical injury resulting from the leak. *Id.* The Court found that Keel's "temporary exposure to sewage water . . .without any evidence of resulting physical injuries" did not satisfy the objective component of an Eighth Amendment claim and that the fact that maintenance repaired the leak "within days" of Keel's grievance (20 days from grievance to repair) meant that Keel could not

17
Case 3:22-cv-00296    Document 86    Filed 02/07/24    Page 17 of 19 PageID #: 609

establish the claim's subjective prong. *Id.* at *3. Similarly, in *Smith v. Copeland*, the Eighth Circuit addressed an Eighth Amendment claim brought by a pretrial detained who "was subject to an overflowed toilet in his isolation cell from July 25 to July 29, 1992." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Smith did not allege any injury from the exposure and did not dispute that he refused the opportunity to "flush the toilet and to clean up the mess[.]" *Id.* at 268. The court found that Smith's allegations "d[id] not rise to a level of constitutional significance" and, instead, described "a *de minimis* imposition[.]" *Id.*

Here, construing the summary judgment record in the light most favorable to him, Taylor has offered evidence to show that his shower drain was clogged for approximately three weeks and ultimately overflowed, flooding his cell with "dirty water," and that he was moved to a new cell the next day. Although Taylor alleged physical symptoms in his amended complaint, he has not offered any evidence of such harm at summary judgment. Thus, the evidence Taylor offers at summary judgment is not sufficient to create a genuine issue of material fact that he suffered the kind of "substantial risk of serious harm" that would constitute an Eighth Amendment violation. *Keel*, 2015 WL 799724, at *3 (citing *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006)). Accordingly, Cunningham is entitled to summary judgment on Taylor's Eighth Amendment conditions-of-confinement claim.

IV.     **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Cunningham's motion for summary judgment (Doc. No. 65) be GRANTED and that summary judgment be entered in his favor. The Magistrate Judge also recommends that, if the Court grants Cunningham's motion for summary judgment, it terminate Taylor's outstanding motions to show a violation of the Eighth Amendment and to appoint counsel for mediation as moot. (Doc. Nos. 75, 84.)

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of February, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge